**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **KELLY RENEE PELICAN-REED** | * | **CIVIL ACTION NO. 6:14-cv-00783** |
| | * | |
| **VERSUS** | * | **JUDGE REBECCA F. DOHERTY** |
| | * | |
| **POLICE DEPARTMENT OF THE CITY OF OPELOUSAS, ET AL.** | * * | **MAG. JUDGE C. MICHAEL HILL** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| FACTS | 1 |
| LAW AND ARGUMENT | 5 |
| A. Summary Judgment Standard | 5 |
| B. Plaintiff's Section 1983 Claims | 6 |
| C. Qualified Immunity | 6 |
| 1. No Constitutional Violation Occurred | 7 |
| 2. Sgt. Etienne and Lt. May Are Entitled To Qualified Immunity | 8 |
| D. The City of Opelousas Cannot Be Held Liable For Unconstitutional Acts of Its Police Officers | 12 |
| E. CONCLUSION | 12 |
| CERTIFICATE OF SERVICE | 13 |

# TABLE OF AUTHORITIES

**Page**

CASES


*Anderson v. Creighton*,
483 U.S. 635, 638-39 (1987) ........ 6

*Board of County Comm'rs of Bryan Co. v. Brown*,
520 U.S. 397, 404 (1997) ........ 12

*Burns-Toole v. Byrne*,
11 F.3d 1270, 1274 (5th Cir. 1994) ........ 7

*Carthon v. Caddo Parish Sheriff*,
2009 WL 3347115 (W.D. La. Oct. 14, 2009) ........ 10, 11

*Davis v. Scherer*,
468 U.S. 183, 191 (1984) ........ 6

*Flagg Bros., Inc. v. Brooks*,
426 U.S. 149, 155 (1978) ........ 6

*Graham v. Conner*,
490 U.S. 386, 394 (1989) ........ 7, 8

*Ikerd v. Blair*,
101 F.3d 430, 433-34 (5th Cir. 1996) ........ 6

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,
379 F.3d 293, 301-02 (5th Cir 2004) ........ 6

*Little v. Liquid Air Corp.*,
37 F.3d 1069, 1075 (5th Cir. 1994) ........ 5

*Malley v. Briggs*,
475 U.S. 335, 341 (1986) ........ 11

*McGregory v. City of Jackson*,
335 Fed. Appx. 446, 448 (5th Cir. 2009) ........ 12

*Michalik v. Hermann*,
422 F.3d 252, 262 (5th Cir. 2005) ........ 6

*Monell v. Dept. of Social Servs. of City of New York*,
436 U.S. 658 (1978) ........ 11, 12

*Pineda v. City of Houston*,
291 F.3d 325, 328 (5th Cir. 2002) ........ 12

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) ........ 12

*Rivera v. Houston Index. Sch. Dist.*,
349 F.3d 244, 247–49 (5th Cir. 2003) ........ 12

*Salas v. Carpenter*,
980 F.2d 299, 306 (5th Cir.1992) ........ 7

*Saucier v. Katz*,
533 U.S. 194 (2001) ........ 7, 8, 9

*Spann v. Rainey*,
987 F.2d 1110, 1115 (5th Cir. 1993) ........ 6

*Valle v. City of Houston*,
613 F.3d 536, 542 (5th Cir. 2010) ........ 12

*Young v. Akal*,
985 F.Supp.2d 785, 796 (W.D. La. 2013) ........ 11

**STATUTES**

42 U.S.C. § 1983 ........ 1, 6, 11, 12

FED. R. CIV. PROC. 56 ........ 5

LA. REV. STAT. § 14:63.3 ........ 9, 10, 11

## INTRODUCTION

On April 9, 2014, plaintiff, Kelly Pelican-Reed, on behalf of her teenage son, J.R. (Jr.), filed this 42 U.S.C. § 1983 action against Opelousas Police Department, Sgt. Loretta Etienne, and Lt. Rodney May. Plaintiff's Complaint asserts the officers violated her son's civil rights by allegedly using excessive force.[1] The Complaint does not that allege that her son was unlawfully arrested. Nor does it allege any acts or conduct by the Opelousas Police Department that could expose it to liability under 42 U.S.C. § 1983.

Sgt. Etienne and Lt. May are entitled to qualified immunity[2] because no constitutional violation occurred and the force they used was objectively reasonable. The Opelousas Police Department is entitled to judgment as a matter of law because a municipality cannot be held vicariously liable under Section 1983 for the alleged unconstitutional acts of its employees.

## FACTS

Sgt. Loretta Etienne and Lt. Rodney May are duly commissioned police officers with the Opelousas Police Department.[3] On the night of October 12, 2013, they worked a private security detail at the Opelousas Skate Center a/k/a Skatz Skating Rink (the "rink") with another off-duty police officer, Pfc. Romalis Curtis.[4] The officers had been hired by Nolan J. Noel, the rink's owner.[5] Mr. Noel had given the officers permission to tell any patron engaging in rowdy, unruly, or threatening behavior to leave the rink.[6] Any patron refusing to leave the rink, after being told by officers to do so, did not have Mr. Noel's permission to be in the rink.[7]

---

1 Amended Complaint, ¶ 3 [Rec. Doc. #15].

2 The Complaint is silent on whether the officers are sued in their individual or official capacities. The officers pled qualified immunity in their Answer, pp. 4-5 ("Tenth Defense") [Rec. Doc. #14].

3 Declaration of Loretta Etienne ("Etienne Decl."), ¶ 1, attached as Exhibit "A;" Declaration of Rodney May ("May Decl."), ¶ 1, attached as Exhibit "B."

4 Etienne Decl., ¶ 3; May Decl., ¶ 3.

5 Declaration of Nolan J. Noel, Jr. ("Noel Decl."), ¶ 1, attached as Exhibit "C."

6 *Id.,* ¶ 2. See also Etienne Decl., ¶ 2 and May Decl., ¶ 2.

7 Noel Decl., ¶ 2. See also Etienne Decl., ¶ 2 and May Decl., ¶ 2.

On the night of October 12, 2013, Sgt. Etienne observed a group of eleven patrons (the "Aggison group") near the girl's bathroom and overheard several of them talking about fighting.[8] At about the same time, Sgt. Etienne observed a smaller group of patrons (the "J.R. (Jr.) group") standing against the wall on the right side of the building.[9] Sgt. Etienne told Rodney May what she had seen and overheard, and the officers agreed to stand near the J.R. (Jr.) group to make sure a fight did not break out.[10]

The Aggison group began walking around the rink, passing by the J.R. (Jr.) group several times as they stood against the wall.[11] On one such occasion, Kaman Aggison stared at the J.R. (Jr.) group as he passed them.[12] When the Aggison group walked past the J.R. (Jr.) group for the fourth time, Mr. Aggison peered at the J.R. (Jr.) group as though he wanted to fight them.[13]

Next, J.R. (Jr.) and another member of his group began walking around the rink in the opposite direction.[14] The two teenagers continued walking until they encountered the Aggison group, which, by then, had walked completely around the rink from the other direction.[15] At this point, Sgt. Etienne, Lt. May, and Pfc. Curtis felt there was a significant risk of a fight breaking-out so they told everyone in the Aggison group to call their rides and go home.[16] Sgt. Etienne directed J.R. (Jr.) to go back to the area where his group had been standing to keep him a safe distance away from the Aggison group while they called their rides.[17]

As members of the Aggison group were standing at the counter near the rink's entrance waiting on their rides, Sgt. Etienne saw J.R. (Jr.) walk across the floor with a pair of skates in his

---

8 Etienne Decl., ¶ 3, attached as Exhibit "A."
9 *Id.*
10 *Id* . See also May Decl., ¶ 3, attached as Exhibit "B."
11 Etienne Decl., ¶ 4.
12 *Id.*
13 *Id.*
14 *Id.,* ¶ 5.
15 *Id.*
16 *Id.,* ¶ 6; May Decl., ¶ 6.
17 Etienne Decl., ¶ 6; May Decl., ¶ 6.

hand.[18] When J.R. (Jr.) arrived at the counter, he put the skates on the counter, turned towards the Aggison group, and made a taunting gesture at them with his hand, appearing as though he wanted to fight them.[19]

After observing this behavior, Sgt. Etienne summoned J.R. (Jr.) closer and told him to call his ride and go home.[20] J.R. (Jr.) became very upset with Sgt. Etienne, and began talking loudly, arguing and cursing.[21] Sgt. Etienne told him several times to keep his voice down, but he refused.[22] She told him to call his ride and go home a second time, but, again, he refused.[23] She then grabbed the sleeve of J.R. (Jr.)'s shirt and advised him that, if he continued to disobey her, he would be arrested.[24] Despite this warning, J.R. (Jr.) continued yelling, cursing, and resisting Sgt. Etienne by pulling away from the female officer's grasp.[25]

While Sgt. Etienne was trying to restrain J.R. (Jr.), who, although only a teenager, is taller and heavier than Etienne, Lt. May came over to assist the female officer.[26] J.R. (Jr.) yelled and cursed at Lt. May, and resisted him too.[27] While the two officers struggled with J.R. (Jr.) to restrain him, Sgt. Etienne accidently scratched him on the neck with her fingernails.[28] These minor injuries are depicted in photographs that were made exhibits to the Complaint.[29]

To restrain J.R. (Jr.), Lt. May put a rear arm bar lock on him—a technique that involves holding a suspect's arm behind his back—and escorted him over to the counter near the rink's

---

18 Etienne Decl., ¶ 7, attached as Exhibit "A."
19 *Id.*
20 *Id.,* ¶ 8.
21 *Id.*
22 *Id.*
23 *Id.*
24 *Id.*
25 *Id.*
26 May Decl., ¶ 7, attached as Exhibit "B;" Etienne Decl., ¶ 9.
27 Nolan Decl., ¶ 4, attached as Exhibit "C."
28 Etienne Decl., ¶ 9.
29 Plaintiff filed five color photos into the record on May 6, 2014. See Notice of Manual Attachment [Rec. Doc. #10]. Two of these photos—one depicting the front J.R. (Jr.)'s neck and the other depicting the back of his neck—are attached hereto as Exhibits "D" and "E," respectively.

entrance.[30] Lt. May held him against the counter until he stopped resisting.[31] Lt. May did not twist or raise J.R. (Jr.)'s arm up above his head, or slam his face into the counter or a wall.[32] The officers escorted J.R. (Jr.) out of the rink and told him to remain on the porch until he calmed down.[33] They decided not to arrest him at that time, provided he agreed to leave the rink.[34] They allowed J.R. (Jr.) to go back inside the rink to call his mother for a ride home.[35]

Soon after J.R. (Jr.) re-entered the rink, officers overheard a lot of cursing and yelling.[36] Officers immediately re-entered the rink, encountered J.R. (Jr.) and Mr. Aggison, and overheard J.R. (Jr.) ask Aggison if he wanted to fight.[37] J.R. (Jr.) and Mr. Aggison were taken into custody, placed under arrest, and charged with disturbing the peace.[38] J.R. (Jr.) was also charged with resisting an officer.[39] They were transported to police headquarters, where they were booked.[40] A short time later, J.R. (Jr.) was released to his mother's custody.[41]

J.R. (Jr.)'s mother took him to Opelousas General Hospital,[42] where, according to the hospital records, he was seen in the ER at 11:46 p.m.[43] J.R. (Jr.) told the attending physician that he had been in an argument with police at a skating rink, was thrown into a wall, and suffered scratches, but did not hit his head.[44] He was noted to have superficial abrasions of the face and

---

30 May Decl., ¶ 8, attached as Exhibit "B;" Etienne Decl., ¶ 10, attached as Exhibit "A."
31 May Decl., ¶ 8; Etienne Decl., ¶ 10.
32 May Decl., ¶ 8; Etienne Decl., ¶ 10. See also Nolan Decl., ¶ 5, attached as Exhibit "C."
33 May Decl., ¶ 9; Etienne Decl., ¶ 11.
34 May Decl., ¶ 9; Etienne Decl., ¶ 11.
35 May Decl., ¶ 9; Etienne Decl., ¶ 11.
36 May Decl., ¶ 10; Etienne Decl., ¶ 12.
37 May Decl., ¶ 11; Etienne Decl., ¶ 13.
38 May Decl., ¶ 11; Etienne Decl., ¶ 13.
39 May Decl., ¶ 11; Etienne Decl., ¶ 13.
40 May Decl., ¶ 12; Etienne Decl., ¶ 14.
41 May Decl., ¶ 12; Etienne Decl., ¶ 14.
42 Amended Complaint [Rec. Doc. #15], ¶ 8.
43 See excerpt of Opelousas General Hospital records—the authenticity and admissibility of which have been admitted by plaintiff—originally marked as Exhibit "A" to Plaintiff's Responses to Requests for Admission attached hereto as Exhibit "F," *in globo*. A complete set of the hospital records appears in the record at Rec. Doc. #17-2.
44 See *id.*

neck, but no swelling, effusion or contusions to the face.[45] He was given ibuprofen, instructed to follow-up with a physician and released from the emergency room at 12:32 a.m.[46]

## LAW AND ARGUMENT

### A. Summary Judgment Standard

A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof. FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.,* 56(c). The non-moving party may not rest on mere allegations or denials of the moving party's pleading, but the nonmoving party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *Id.,* 56(e).[47]

The summary judgment burden of proof is altered in qualified immunity cases:

> When a governmental official with discretionary authority is sued for damages under section 1983 and properly raises the defense of qualified immunity, the plaintiff bears the burden of rebutting that defense. In ruling on a motion for summary judgment based on qualified immunity, the court first determines whether there is evidence to sustain a finding that the defendant's complained of

45 See *id.*

46 See *id.*

47 The Fifth Circuit explained in *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994):

> This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. We resolve factual controversies in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof assume that the nonmoving party could or would prove the necessary facts …. [S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant. [Citations and internal quotations omitted].

> conduct violated plaintiff's constitutional rights. If not, no further inquiry is needed and defendant is entitled to qualified immunity. If so, the inquiry proceeds to determine whether there is evidence to sustain a finding that under the existing circumstances it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If not, the defendant is entitled to qualified immunity. [Emphasis added.]

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 301-02 (5th Cir 2004). See also *Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005).

**B. Plaintiff's Section 1983 Claims**

To establish a claim under 42 U.S.C. § 1983, a plaintiff must show that her constitutional rights were violated. *Flagg Bros., Inc. v. Brooks,* 426 U.S. 149, 155 (1978). Here, the basis for plaintiff's Section 1983 claim is that Sgt. Etienne and Lt. May used excessive force when her son refused to obey officers' instructions and actively resisted them.

A plaintiff can prevail on an excessive force claim only by proving each of the following three elements: (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and, the excessiveness of which was (3) objectively unreasonable. *Ikerd v. Blair,* 101 F.3d 430, 433-34 (5th Cir. 1996) (quoting *Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir. 1993)).

**C. Qualified Immunity**

Government officials who perform discretionary functions are entitled to qualified immunity shielding them from individual liability as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person in the defendant's position would have known. *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987). The standard for examining qualified immunity is one of objective legal reasonableness in light of the rights of the parties involved. *Davis v. Scherer,* 468 U.S. 183, 191 (1984). Claims of immunity are thus

to be analyzed by whether a reasonable official in the defendant's position could have believed that his conduct was lawful in light of clearly established law and the information he possessed. *Anderson,* 483 U.S. at 641.

The defendant bears the initial burden of establishing that he was acting within the scope of his discretionary authority during the incident in question. If the defendant meets this burden, the burden shifts to the plaintiff. *Salas v. Carpenter,* 980 F.2d 299, 306 (5th Cir.1992). Plaintiff has the burden to show that the law was clearly established when the violation occurred and that the defendant did not have an objectively reasonable belief that his conduct did not violate that clearly-established law. *Burns-Toole v. Byrne,* 11 F.3d 1270, 1274 (5th Cir. 1994).

In *Saucier v. Katz,* 533 U.S. 194 (2001), the United States Supreme Court examined the relationship between a claim of excessive force against a government official and the doctrine of qualified immunity. In *Saucier,* the Supreme Court stated that in "a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in the proper sequence." *Id.* at 200. In evaluating such claims, the threshold question is: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If not, the inquiry ceases there. If the injured party is able to show the violation of a constitutional right, then the court must undertake a two-step analysis: (1) whether the violated right was clearly established; and, (2) whether the defendant's conduct was objectively reasonable under existing clearly established law. *Id.* at 201-02

**1. No Constitutional Violation Occurred.**

Freedom from the use of excessive force is clearly an established constitutional right under the Fourth Amendment. *Graham v. Conner,* 490 U.S. 386, 394 (1989). In *Saucier,* the

Supreme Court noted that claims of excessive force by the police continue to be governed by the framework the Court established in *Graham*. *Saucier*, 533 U.S. at 204-05. This standard calls for an evaluation of the objective reasonableness of the officer's conduct. *Graham,* 490 U.S. at 388.

In determining whether the use of force by a police officer was objectively reasonable, *Graham* instructs that:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight…. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396-97.

In this case, plaintiff's son incurred superficial abrasions—fingernail scratches to the face and neck—after he twice refused to obey Sgt. Etienne's commands to leave the rink, yelled and cursed at her, and physically resisted her efforts, and those of Lt. May, to restrain him and compel compliance with her commands. Officers used only the amount of force necessary to overcome J.R. (Jr.)'s active resistance.[48] It was *de minimus*—only enough to produce the minor injuries[49] that he incurred. He denied any blow to the head. No reasonable jury could find this amount of force to be objectively unreasonable.

**2. Sgt. Etienne and Lt. May Are Entitled To Qualified Immunity**.

Even if a constitutional violation had occurred in this case, Sgt. Etienne and Lt. May are nevertheless entitled to qualified immunity. The officers' actions were based upon a reasonable belief that their conduct was lawful under the circumstances.

---

48 Etienne Decl., ¶ 15, attached as Exhibit "A;" May Decl., ¶ 13, attached as Exhibit "B."

49 See hospital records, n. 43, *supra,* and photographs, n. 29, *supra.*

The Supreme Court in *Saucier, supra,* made clear that the inquiry pertaining to whether an officer's use of force is reasonable is distinct from that required to establish that the officer is entitled to qualified immunity. *Id.,* 533 U.S. at 204. In the words of the Supreme Court, "[t]he qualified immunity inquiry … has a further dimension." *Id.* at 205. This dimension allows an officer who has exerted an objectively unreasonable, and therefore excessive, amount of force to be entitled to qualified immunity if he had a reasonable belief that his actions were nonetheless constitutional. *Id.* An officer is entitled to qualified immunity even in cases where he "correctly perceives all the relevant facts but [has] a mistaken understanding as to whether a particular amount of force is legal …. [i]f the officer's mistake as to what the law requires is reasonable …." *Id.*

In this case, Sgt. Etienne and Lt. May had been authorized by the rink's owner, Nolan J. Noel, to direct any patron engaging in rowdy, unruly, or threatening behavior to leave the rink. Any patron who refused to leave, after being told to do so, did not have Mr. Noel's permission to be in his place of business. Under Louisiana law, such a person is trespassing and, therefore, subject to arrest.

LA. REV. STAT. § 14:63.3 provides as follows:

> A. No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any other movable, or immovable property, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, including by means of any sign hereinafter described, by any owner, lessee, or custodian of the property or by any other authorized person.
>
> * * *
>
> B. Whoever violates the provisions of this Section shall be guilty of a misdemeanor and upon conviction thereof shall be fined not

> more than five hundred dollars or imprisoned in the parish jail for not more than six months, or both.

Sgt. Etienne and Lt. May reasonably believed that a violation of LA. REV. STAT. § 14:63.3 had occurred when J.R. (Jr.) twice refused her commands to leave the rink. Grabbing this young man's sleeve to compel his compliance and warning him that he would be arrested if he continued to disobey her was objectively reasonable under these circumstances. So too was Sgt. Etienne's attempt to restrain him after he ignored her warning, continued yelling and cursing at her, and physically resisted her.

Lt. May's use of force was likewise objectively reasonable. When he came over to assist the smaller female officer, J.R. (Jr.) actively resisted him too. During the struggle, Sgt. Etienne accidently scratched J.R. (Jr.) with a fingernail. Lt. May was finally able to restrain J.R. (Jr.) by means of an arm bar lock, which involved holding the young man's arm behind his back. Lt. May did not raise his arm above his head or slam his face into the counter or a wall. Plaintiff's allegations to the contrary are belied by the account of an independent eyewitness, her son's statement to the ER physician that he did not hit his head, and hospital records noting the lack of any swelling, effusion or contusions to his face.

In *Carthon v. Caddo Parish Sheriff,* 2009 WL 3347115 (W.D. La. Oct. 14, 2009), the plaintiff attended a high school football game. Off-duty sheriff's deputies were hired to provide security at the game. During the game, deputies asked spectators to find a seat and move from the aisles. When plaintiff remained seated in the aisle, a deputy approached him and again asked that he move from the aisle. Plaintiff complied, but later sought out the deputy on two separate occasions and requested his name and badge number. The deputy told plaintiff to "move on" and enjoy the game. When he failed to comply with the request to "move on," deputies believed the situation had the potential to escalate. Thus, they asked him to leave the stadium. Plaintiff

ignored the deputies' request and, when it became apparent that he would not leave voluntarily, deputies grabbed his arms and escorted him out of the stadium. Plaintiff received a scrape to his forehead when deputies pushed him to the ground and handcuffed him.

The spectator in *Carthon* filed a Section 1983 action against the deputies and Sheriff's Office for allegedly arresting him without probable and for using excessive force. The Judge granted summary judgment in defendants' favor. The Judge concluded that the deputies were entitled to qualified immunity because probable cause existed for the spectator to be arrested for violating Louisiana's "entry on or remaining in places after being forbidden" statute. LA. REV. STAT. § 14:63.3. With respect to the excessive force claim, the Judge found that a mere scrape on the forehead was insufficient to establish a constitutional violation. Even if the spectator's injury had been sufficient to establish a violation, the Judge found that the amount of force used by the deputies was objectively reasonable. He agreed that the Sheriff's Office could not be held liable under 42 U.S.C. § 1983 for the actions of its employees. And, he dismissed the *Monell*[50] claim because the spectator had failed to identify any policy or custom that was the moving force behind the deputies' actions.

Just as the enforcement officers in *Carthon* were permitted to use objectively reasonable force on the spectator who refused to leave the stadium, so too were Sgt. Etienne and Lt. May entitled to use objectively reasonable force on J.R. (Jr.) when he refused to leave the skating rink, became verbally abusive, and actively resisted the officers. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Young v. Akal,* 985 F. Supp. 2d 785, 796 (W.D. La. 2013), citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Sgt. Etienne and Lt. May are thus clearly entitled to qualified immunity.

---

50 *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658 (1978)

**D. The City of Opelousas Cannot Be Held Liable For Unconstitutional Acts Of Its Police Officers.**

A local government agency cannot be held liable for the unconstitutional actions of its employees or agents. *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658 (1978); *Piotrowski v. City of Houston,* 237 F.3d 567 (5th Cir. 2001). A municipality is not liable under Section 1983 solely because it employs a tortfeasor. *Board of County Comm'rs of Bryan Co. v. Brown,* 520 U.S. 397, 403 (1997). Instead, a local government agency can be held liable under 42 U.S.C. § 1983 only if the plaintiff establishes (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *McGregory v. City of Jackson,* 335 Fed. Appx. 446, 448 (5th Cir. 2009), citing *Rivera v. Houston Index. Sch. Dist.,* 349 F.3d 244, 247–49 (5th Cir. 2003); *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002). Moreover, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Comm'rs of Bryan Co., supra,* 520 U.S. at 404; *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).

The Complaint alleges only that the Opelousas Police Department is the employer of Sgt. Etienne and Lt. May.[51] A municipality cannot be held vicariously liable under 42 U.S.C. § 1983 for the alleged unconstitutional acts of its employees. Thus, the Opelousas Police Department is entitled to judgment as a matter of law.

## IV. CONCUSION

WHEREFORE, defendants, THE CITY OF OPELOUSAS, through the Opelousas Police Department, LORETTA ETIENNE and RODNEY MAY, pray that their motion for summary judgment be granted, dismissing the claims of plaintiff, KELLY RENEE PELICAN-REED, with

[51] Amended Complaint, ¶ 12 [Rec. Doc. #15].

prejudice and at her sole cost. Defendants further pray for such general and equitable relief to which they may be entitled.

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ A. Kirk Gasperecz*

A. Kirk Gasperecz (La. Bar #17583)
4500 One Shell Square
New Orleans, LA 70139
(504) 581-3234

Attorneys for Defendants,
POLICE DEPARTMENT OF THE CITY OF OPELOUSAS, LORETTA ETIENNE and RODNEY MAY

**CERTIFICATE OF SERVICE**

I certify that on October 14, 2014, a copy of the above and foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system. All unrepresented parties are being served by depositing a copy of this pleading in the United States Mail, properly addressed and first class postage pre-paid this same date.

*/s/ A. Kirk Gasperecz*
A. KIRK GASPERECZ