**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **KELLY RENEE PELICAN-REED** | * | **CIVIL ACTION NO. 6:14-cv-00783** |
| | * | |
| **VERSUS** | * | **JUDGE REBECCA F. DOHERTY** |
| | * | |
| **POLICE DEPARTMENT OF THE CITY OF OPELOUSAS, ET AL.** | * | **MAG. JUDGE C. MICHAEL HILL** |
| | * | |

**DECLARATION OF RODNEY MAY**

Pursuant to 28 U.S.C. § 1746, the undersigned, Rodney May, declares under penalty of perjury that the following statements are true and correct:

1. I am presently, and have been since 1999, a commissioned police officer with the Opelousas Police Department. My current rank is Lieutenant.

2. From time to time, Nolan J. Noel, the owner of Opelousas Skate Center a/k/a Skatz Skating Rink (the "rink"), hires me and other off-duty police officers to work a security detail at the rink. Mr. Noel has informed us that, if we observe a patron engaging in any rowdy, unruly, or threatening behavior, we have his permission to direct the patron to leave the rink. Any patrons who refuse to leave the rink, after we direct them to do so, do not have Mr. Noel's permission to be in his place of business.

3. On October 12, 2013, Sgt. Loretta Etienne, Pfc. Romalis Curtis, and I worked a security detail at the rink. That night, Sgt. Etienne informed me that she had observed a group of patrons near the girl's bathroom, and overheard them talking about fighting, and that she had observed smaller group of patrons standing against the wall on the right side of the building. I too observed both groups. Sgt. Etienne, Pfc. Curtis and I decided to position ourselves near the smaller group to make sure a fight did not break out.

EXHIBIT
tabbles
B

4. While I was observing them, the larger group of patrons began walking around the rink, passing by the smaller group of patrons several times as they stood against the wall. On one such occasion, a member of the larger group, Kaman Aggison, stared at the smaller group. Later, when the larger group walked past the smaller group about the fourth time, Mr. Aggison peered at the smaller group as though he wanted to fight them.

5. Two members of the smaller group—one of whom I learned was Mrs. Pelican-Reed's son, began walking around the rink in the opposite direction. The two continued walking until they encountered the larger group ("Mr. Aggison's group"), which, by then, had walked completely around the rink from the other direction.

6. At this point, Sgt. Etienne, Pfc. Curtis, and I felt there was a significant risk of a fight breaking-out so we directed everyone in Mr. Aggison's group to call their rides and go home. Sgt. Etienne directed Mrs. Pelican-Reed's son to go back to the area where he had been standing against the wall in order to keep him a safe distance away from Mr. Aggison's group while they called their rides.

7. A short time later, I observed Sgt. Etienne and Mrs. Pelican-Reed's son engaged in a physical struggle. Mr. Reed was yelling, cursing and resisting the smaller, female officer. I immediately came over to assist Sgt. Etienne. While were attempting to restrain Mr. Reed, she apparently scratched Mr. Reed on his neck.

8. To restrain Mr. Reed, I put a rear arm bar lock on him—a technique that involves holding a suspect's arm behind his back—and escorted him over to the counter near the rink's entrance. I held him against the counter until he stopped resisting. I did not twist or raise Mr. Reed's arm up above his head. Nor did I slam his face into a wall or the counter.

9. I escorted Mr. Reed out of the rink and told him to remain on the porch until he calmed down. We decided not to arrest Mr. Reed at that time, provided he agreed to leave the rink. Mr. Reed was allowed to go back inside the rink to call his mother for a ride home.

10. Soon after Mr. Reed re-entered the rink, Sgt. Etienne and I heard a lot of cursing and yelling. We ran back inside the rink, where we encountered Mr. Reed and Mr. Aggison, and we overheard Reed ask Aggison if he wanted to fight.

11. At that time, Mr. Reed and Mr. Aggison were taken into custody and placed under arrest. Both were charged with disturbing the peace by loud and abusive language. Mr. Reed was also charged with resisting an officer.

12. Mr. Reed and Mr. Aggison were transported to police headquarters, where they were each booked. A short time later, Mr. Reed was released to his mother's custody.

13. Sgt. Etienne and I used only the amount of force that was necessary to overcome Mr. Reed's active resistance.

Executed on the 1st day of Oct., 2014.

[signature]
RODNEY MAY