## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

KELLY RENEE PELICAN-REED       **CASE NO: 14-CV-0783**

**VERSUS**       **JUDGE DOHERTY**

**POLICE DEPT. CITY OF**       **MAGISTRATE JUDGE HILL**
**OPELOUSAS, ET AL**

## REPORT AND RECOMMENDATION
## ON MOTION FOR SUMMARY JUDGMENT

Pending before the undersigned for Report and Recommendation is Defendants' Motion for Summary Judgment filed by the City of Opelousas, through the Opelousas Police Department (the "City"), Loretta Etienne ("Etienne"), and Rodney May ("May"), on October 14, 2014. [rec. doc. 20]. *Pro se* plaintiff, Kelly Renee Pelican-Reed ("Pelican-Reed"), on behalf of her minor son, JR ("JR"), filed opposition on October 30, 2014. [rec. doc. 24]. Defendants filed a reply on November 12, 2014. [rec. doc. 29].

Oral argument was held on November 19, 2014, after which I took the motion under advisement.

For the following reasons, I recommend that the Motions for Summary Judgment be **GRANTED**, and that all claims filed by plaintiff be **DISMISSED WITH PREJUDICE.**

### Background

Pelican-Reed, on behalf of her minor son, JR, filed an action in this Court under 42 U.S.C. § 1983 seeking money damages against the City and Officers Etienne and May of the

Opelousas Police Department.

Sgt. Etienne, Lt. May and Pfc. Romalis Curtis ("Curtis") are police officers with the Opelousas Police Department.  On October 12, 2013, Nolan J. Noel ("Noel"), who was the owner of Opelousas Skate Center a/k/a Skatz Skating Rink (the "rink"), in Opelousas, Louisiana, hired off-duty officers Etienne, May and Curtis to work security details at the rink. [rec. doc. 20, Exhibit A, Declaration of Loretta Etienne, ¶ 3; Exhibit B, Declaration of Rodney May, ¶ 3; Exhibit C, Declaration of Nolan J. Noel, ¶ 1].  Noel gave the officers his permission to direct any patron engaging in rowdy, unruly or threatening behavior to leave the rink. [Exhibit C, ¶ 2].  Any patron refusing to leave, after the officers directed them to do so, did not have Noel's permission to be in the rink.  [*Id*.].

On the night of October 12, 2013, Etienne overheard a group of approximately 11 patrons (the "Aggison group") near the girls' bathroom talking about fighting.  [Exhibit A, ¶ 3].  About the same time, she witnessed a smaller group of patrons, including JR (the "JR group"), standing against the wall on the right side of the building.  [*Id*.].  Etienne told May what she had observed, and Lt. May, Pfc. Curtis and Sgt. Etienne agreed to stand near the JR group to make sure that a fight did not break out.  [*Id*.; Exhibit B, ¶ 3].

As Etienne observed the patrons, the Aggison group began walking around the rink, passing by the JR group several times.  [Exhibit A, ¶ 4.].  During one occasion, a member of the larger group, Kaman Aggison, stared at the JR group as he passed.  [*Id*.].  On about the fourth pass, Kaman Aggison looked at the JR group as though he wanted to fight them.  [*Id.*].

Next, JR and another member of his group began walking around the rink in the opposite direction.  [*Id.*, ¶ 5].  The two continued walking until they encountered the Aggison group which, by then, had walked completely around the rink from the other direction.  [*Id.*]. At this point, the three officers believed there was a significant risk of a fight breaking out, and told everyone in the Aggison group to call their rides and go home.  [*Id.*, ¶ 6; Exhibit B, ¶ 6].

Etienne directed JR to go back to the area where his group had been standing against the wall to keep him a safe distance away from the Aggison group while they called their rides. [Exhibit A, ¶ 7].  As members of the Aggison group were standing at the counter near the rink's entrance waiting on their rides, Etienne observed JR walk across the floor with a pair of skates in his hand.  [*Id.*].  When JR arrived at the counter, he put the skates on the counter, turned towards the Aggison group, and made a taunting gesture at them with his hand, appearing as though he wanted to fight them.  [*Id.*].

After observing JR's behavior, Etienne summoned him to come closer and told him to call his ride and go home.  [*Id.*, ¶ 8].  JR became very upset, and began talking loudly, arguing and cursing.  [*Id.*].  Etienne told him to several times to keep his voice down, but he refused. [*Id.*].  After she told him to call his ride a second time, he again refused.  [*Id.*].  She then grabbed JR's shirt sleeve and advised him that, if he continued to disobey her, he would be arrested.  [*Id.*].  Despite Etienne's warning, JR continued yelling, cursing and resisting Etienne by pulling away from her grasp.  [*Id.*]

While Etienne was trying to restrain the JR, who was taller and heavier than she was, May came over to assist her.  [*Id.*, ¶ 9; Exhibit B, ¶ 7].  JR yelled and cursed at May, and

resisted him also.  [Exhibit C, ¶ 4].  While the officers struggled to restrain JR, Etienne accidently scratched JR on the neck with her fingernails.  [Exhibit A, ¶ 9].  Photographs show that JR sustained minor scratches to his neck.  [rec. doc. 20, Exhibits D, E].

To restrain JR, May placed a rear arm bar lock on him, a technique which involves holding a suspect's arm behind his back.  [Exhibit A, ¶ 10; Exhibit B, ¶ 8].  He did not twist or raise JR's arm up above his head, or slam his face into the counter or a wall.  [Exhibit A, ¶ 10; Exhibit B, ¶ 8; Exhibit C, ¶ 5].  May then escorted JR over to the counter near the entrance, and held him against the counter until JR stopped resisting.  [Exhibit A, ¶ 10; Exhibit B, ¶ 8].

The officers escorted JR out of the rink, and told him to remain on the porch until he calmed down.  [Exhibit A, ¶ 11; Exhibit B, ¶ 9].  At that time, they decided not to arrest him, provided he agreed to leave the rink.  [*Id*.].  They allowed JR to go back inside to call his mother for a ride home.  [*Id*.].

Soon after JR re-entered the rink, officers overheard a lot of cursing and yelling.  [Exhibit A, ¶ 12; Exhibit B, ¶ 10].  After running back inside the rink, the officers encountered JR and Amar Aggison, and overheard JR ask Amar Aggison if he wanted to fight.  [Exhibit A, ¶ 13; Exhibit B, ¶ 11].  The officers then took JR and Amar Aggison into custody, placed them under arrest, and charged them with disturbing the peace by using loud and abusive language.  [*Id*.].  JR was also charged with resisting an officer.  The officers transported JR and Amar Aggison to police headquarters, where they were booked.  [Exhibit A, ¶ 14; Exhibit B, ¶ 12].

Shortly afterwards, JR was released to his mother's, custody.  [*Id*.].  She took him to Opelousas General Hospital, where JR was seen in the emergency room at 11:46 p.m.  [rec.

doc. 20, medical records].  JR told the attending physician that he had been in an argument with police at a skating rink, was thrown into a wall, and suffered scratches.  [*Id*.].  He reported that he did not hit his head.  [*Id*.].

The examining physician, Dr. Charles Richard, noted that JR had superficial abrasions of the face and neck, but no swelling, effusion or contusions to the face.  [*Id*.].  He was given ibuprofen, instructed to follow-up with a physician, and released at 12:32 a.m.  Records from JR's family physician, Dr. C. Bertrand, show that RJ was seen for an "ADHD consult and f/u from ER."  No further treatment was indicated.

On April 9, 2014, Pelican-Reed filed a civil rights action in this Court.  [rec. doc. 1]. On October 14, 2014, defendants filed the instant motion for summary judgment, on the grounds of qualified immunity.  [rec. doc. 20].

## Summary Judgment Standard

Fed. R. Civ. Proc. 56(a) provides that a motion for summary judgment shall be granted if the pleadings, depositions, discovery responses, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  When the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. *International Association of Machinists and Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000) (*citing  Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial.  *Id*. (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted.  *Id*. (*citing Celotex Corp*., 477 U.S. at 322, 106 S.Ct. 2458.)).

## **Law and Analysis**

### ***Civil Rights Claim Against Officers***

Pelican-Reed alleges that officers Etienne and May violated 42 U.S.C. § 1983 by using excessive force against JR, including May's twisting of JR's arm above his head and slamming his face into a wall.  Etienne and May argue that they are entitled to qualified immunity because no constitutional violation occurred and the force they used was objectively reasonable.

Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights. 42 U.S.C. § 1983.  To state a section 1983 claim, a plaintiff must: (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014).

The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (*citing Colston v. Barnhart*, 130 F.3d 96, 102 (5th Cir.1997). In order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and that (3) the force used was objectively unreasonable." *Hogan v. Cunningham*, 722 F.3d 725, 734 (5ᵗʰ Cir. 2013) (*quoting Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). In gauging the objective reasonableness of the force used by a law enforcement officer, the Court must balance the amount of force used against the need for that force. *Ikerd*, 101 F.3d at 434.

By their motion, Etienne and May assert that they are entitled to qualified immunity. Qualified immunity protects public officers from suit if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Wilson v. Louisiana*, 2014 WL 1788283, at *5 (W.D. La. May 5, 2014) (Walter, J). "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (*quoting Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).

Public officials such as Etienne and May are entitled to qualified immunity on summary judgment unless (1) Pelican-Reed has "adduced sufficient evidence to raise a genuine [dispute]

of material fact suggesting [the officers'] conduct violated an actual constitutional right," and (2) the officers' "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question."  *Poole*, 691 F.3d at 627.

Here, I find that Pelican-Reed has failed to adduce sufficient evidence to raise a genuine issue of material fact as to Etienne and May's alleged violation of any constitutional right.  The emergency room records from Opelousas General show that JR sustained only "superficial" and "small" abrasions on his neck and cheek.  Additionally, the affidavits reflect that May neither twisted or raised JR's arm up above his head, nor slammed JR's face into a wall or the counter.  [rec. doc. 20, Exhibits A, B, C].  Further, JR did not report hitting his head to emergency room personnel.  [rec. doc. 20, medical records].

The evidence shows that the officers acted reasonably in subduing JR after he disobeyed their orders and resisted arrest.  [rec. doc. 20, Exhibits A, B, C].  Additionally, the photographs as well as the medical records show that JR sustained only superficial injuries.  [rec. doc. 20, Exhibits D, E; medical records].  Based on the record, it is clear that the force used by the officers appropriate and that any injury was clearly *de minimus*.

The undersigned further observes that plaintiff has failed to submit any pleadings, depositions, discovery responses, or affidavits to controvert defendants' motion for summary judgment.  The only "evidence" she submitted was her own, unsubstantiated allegations.  The nonmoving party cannot satisfy her summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence.  *Thompson v. Goetzmann*, 337 F.3d 489, 503 (5th Cir. 2003).

Accordingly, the undersigned finds that officers Etienne and Reed are entitled to

qualified immunity, and recommends that their motion for summary judgment be **GRANTED**.

### ***Civil Rights Claim against the Opelousas Police Department***

Pelican-Reed has also asserted a claim against the Opelousas Police Department.  [rec.

doc. 12, Amended Complaint].  Her only allegations are that she "is filing a lawsuit on behalf

of my minor son J.R. (Jr.) against the Opelousas Police Department, (Sgt) Loretta Etienne, and

Officer Rodney May who are presently employed with the Opelousas Police Department."

[rec. doc. 12, ¶ 12].[1]

In a  §1983 action, municipalities and other local governing bodies cannot be held liable

under a theory of *respondeat superior*;  rather, liability must be based upon a municipality's

official or unofficial policy, custom or procedure which causes a deprivation of plaintiff's

constitutional rights.  *Monell v.  Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct.

2018, 2036, 56 L.Ed.2d 611 (1978).  A supervisory official may be held liable only if: (i) he

affirmatively participates in acts that cause constitutional deprivation; or (ii) implements

unconstitutional policies that causally result in plaintiff's injury.  *Porter v. Epps*, 659 F.3d 440,

446 (5th Cir. 2011).

Here, plaintiff alleges only that the Opelousas Police Department is Etienne and May's

employer. There are no allegations that the City had a policy, custom or procedure which

caused a deprivation of JR's constitutional rights causally resulting in his injury.  As plaintiff

---

[1]Given that the plaintiff is proceeding *pro se*, the Court indicated that it would consider the suit against the Opelousas Police Department as actually being against the City of Opelousas. The defendant agreed to this procedure so that amending pleadings would not have to be filed.

has not alleged any involvement by the City in the incident at issue, she has failed to state a cause of action under § 1983.

## CONCLUSION

For the foregoing reasons, I recommend that Motion for Summary Judgment filed by the City of Opelousas, through the Opelousas Police Department, Loretta Etienne, and Rodney May [rec. doc. 20] be **GRANTED**, and that all claims against them be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D**

**1415 (5TH CIR. 1996).**

Signed December 5, 2014, at Lafayette, Louisiana.

_C Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT
DATE: ___12/5/2014___
BY: ___cgg_____
TO: __RFD_____